[Crim. No. 9131. First Dist., Div. Two. May 26, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL CHAPMAN, Defendant and Appellant.

## COUNSEL

Stanley Fleishman and David M. Brown for Defendant and Appellant.

Evelle J. Younger, Attorney General, and William D. Stein, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SHOEMAKER, P. J.**—The Appellate Department of the Superior Court of Alameda County has certified to this court on its own motion and we have accepted the instant case which involves a prosecution under Penal Code section 311.2 (sale or distribution of obscene matter). The case reached the appellate department on appeal from the denial by the municipal court of a motion to suppress evidence seized under a search warrant, the motion being made pursuant to Penal Code section 1538.5 et seq. The appellate department affirmed the order of the municipal court as to books and magazines *purchased by the officer from defendant* and alleged to be obscene. *The order was reversed as to the allegedly obscene books and magazines which were seized under a search warrant issued ex parte.*

The facts are undisputed. On September 23, 1969, a search warrant authorizing the search of the Readmore Books Store in Fremont was issued by the Municipal Court for the Fremont-Newark-Union City Judicial District of the County of Alameda. The search warrant *described by name* 30 magazines and paperback books alleged to be in the possession of Paul Chapman and on the premises of the Readmore Books Store at 129 Anza Street in Fremont. The warrant issued upon the affidavit of Leroy Pyle, a detective of the Fremont Police Department who had previously purchased some of the magazines and had looked at parts of the paperback books. The affidavit described the pictures and activity depicted in the material in graphic detail and concluded with the belief of the detective that the magazines and paperback books were obscene and appealed to prurient interest. The affidavit also alleged that the judge had seen the magazines "21" and "His and Hers" and that he had read parts of the paperback book entitled "The Unwilling Switchers" and was of the opinion the matter was obscene.

On September 23, 1969, pursuant to the authorization in the warrant, the Readmore Books Store was searched and the magazines and paperback books seized were listed on the return to the search warrant. A total of 47 magazines and 31 paperback books were taken. Some magazines not named in the search warrant were taken.

On September 23, 1969, a complaint issued in the Municipal Court for the Fremont-Newark-Union City Judicial District, County of Alameda, charging Paul Chapman in two counts with committing misdemeanors. Count one set forth a violation of section 311.2 of the Penal Code on September 19, 1969, in that he "willfully and knowingly offered to distribute and had in his possession with intent to distribute, and distributed obscene matter, to wit: two obscene magazines and an obscene paperback book."

The second count alleged that on September 22, 1969, the defendant violated section 311.2 of the Penal Code in that he "willfully and knowingly offered to distribute and had in his possession with intent to distribute, and distributed obscene matter, to wit: an obscene magazine."

On September 23, 1969, at the time of the seizure under the search warrant, defendant Paul Chapman was arrested pursuant to an arrest warrant and released on $1,000 bail.

On September 29, 1969, an amended complaint issued charging Chapman with additional counts of violating section 311.2 of the Penal Code, naming paperback books and magazines seized in the search.

On December 23, 1969, defendant Chapman made a motion to suppress

evidence and for the restoration of property seized under the search warrant pursuant to sections 1538.5, 1539 and 1540 of the Penal Code.

On February 11, 1970, the municipal court ordered that the books seized by the police which were not listed on the warrant be returned to the defendant and denied the motion to suppress as to all the other books seized in the search warrant with the exception of "Pimp: The Story of My Life," which it found to be not obscene within the constitutional sense.

On February 20, 1970, defendant Chapman filed a notice of appeal to the appellate department of the superior court.

On July 15, 1970, the appellate department of the superior court entered the order with which we are concerned. In making said ruling, the department relied upon *People* v. *de Renzy* (1969) 275 Cal.App.2d 380 [79 Cal. Rptr. 777], and explains its action by pointing to the holding in *de Renzy* (p. 386) where the court states that "law enforcement officers, acting under authority of a search warrant, may seize at least one copy of an alleged obscene book, film, or other material when necessary for use as evidence in a later adversary proceeding, without doing violence to the First or Fourth Amendment," but in another portion of the opinion it is stated that "We recognize that there may be circumstances where, by fortuity, obscene matter may be produced by the state without need of search or seizure or court process, e.g., *books offered for public sale. In such cases any seizure without prior adversary proceedings obviously would be constitutionally impermissible*" (p. 384; italics added) and that feeling governed by the latter statement it ruled as it did even though it considered the observation dicta.

■  The defendant's contentions before the appellate department were: (1) that Penal Code, section 311.2, was unconstitutional by reason of the United States Supreme Court's decision in *Stanley* v. *Georgia* (1969) 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243], and (2) that a prior adversary hearing must be conducted before a search warrant may be issued for a seizure of books and magazines alleged to be obscene, when such publications are available for public sale.

As to the first contention, the appellate department ruled that the section attacked was constitutional and was not affected by *Stanley* v. *Georgia, supra,* a ruling that anticipated the holding of our Supreme Court in *People* v. *Luros* (1971) 4 Cal.3d 84 [92 Cal.Rptr. 833, 480 P.2d 633], wherein a like argument was held to be without merit.

■  As to the second contention, we likewise conclude that the *Luros* case disposes of it.

In *Luros,* the trial court had set aside an indictment under Penal Code section 311.2, because the prosecution failed to present evidence to the grand jury of contemporary community standards. The trial court recognized that its ruling was in conflict with the holding of *Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 798 [13 Cal.Rptr. 415, 362 P.2d 47], and *People* v. *Aday* (1964) 226 Cal.App.2d 520, 531-532 [38 Cal.Rptr. 199], but was of the view that those cases had been overruled by more recent decisions. However, our Supreme Court in *Luros* points out that the two *Aday* cases were correctly decided and are the law today. In *Aday* v. *Superior Court, supra,* the magistrate had issued a search warrant which authorized seizure of two named books alleged to be obscene; the magistrate had read portions of the two named books which had been purchased by a police officer before issuing the warrant, but had not received evidence as to contemporary community standards; the Supreme Court examined the books in light of the test for obscenity set forth in *Roth* v. *United States* (1957) 354 U.S. 476, 487-489 [1 L.Ed.2d 1498, 1508-1510, 77 S.Ct. 1304], " 'whether to the average person, applying contemporary community standards, the dominent theme of the material taken as a whole appeals to prurient interest,' " (*Aday* v. *Superior Court, supra,* p. 798) and came to the conclusion that there was probable cause to believe them obscene, and that it is "not necessary . . . to . . . receive evidence as to contemporary community standards in order to determine the issue of probable cause." (*Aday* v. *Superior Court, supra,* p. 798.) The Supreme Court in *Luros* quotes from the *Aday* case as follows: " 'Where, as here, the seizure occurs under a warrant, *an ex parte determination* of the issue of obscenity, so far as probable cause is concerned, has taken place before issuance of the warrant, and immediately *after the seizure* a determination of the issue to that extent can be obtained in *adversary proceedings* by controverting the warrant under sections 1539 and 1540 of the Penal Code. In the event the owner is unsuccessful in that proceeding, a final determination as to obscenity will be had in the criminal action which will ordinarily follow within a reasonable time, or other remedies such as mandamus will be available to secure return of the property.' (*Aday* v. *Superior Court, supra,* 55 Cal.2d at p. 799.)" (*People* v. *Luros, supra,* p. 88; italics added.)

Subsequent to the *Aday* cases, the Legislature added section 1538.5 to the Penal Code (Stats. 1967, ch. 1537, § 1, p. 3652), which provides that a defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure, with attendant provisions for review by mandamus or appeal, the remedy employed by the defendant in this case and the avenue by which he reached this court.

The issue of the necessity for a prior adversary hearing was before the United States Supreme Court in *Perez* v. *Ledesma* (1971) 401 U.S. 82 [27 L.Ed.2d 701, 91 S.Ct. 674]. In that case, a three-judge federal court had ruled that the arrest of a newsstand operator and the seizure of allegedly obscene material were invalid *for lack of a prior adversary hearing on the character of the seized materials,* and had entered a suppression order requiring the return of all the seized material. The United States Supreme Court based its reversal of the order on *Younger* v. *Harris,* decided the same day,[1] and therefore had no occasion to consider the holding of the three-judge court that the seizures and the arrest of Ledesma could not be constitutionally undertaken prior to an adversary judicial determination of obscenity.

In a footnote in a concurring and dissenting opinion by Mr. Justice Brennan, however (401 U.S. at p. 97, fn. 2 [27 L.Ed.2d 712-713, fn. 2]), the United States Supreme Court noted that it had affirmed a judgment in a case containing a contrary view as to the necessity of a hearing prior to an arrest for obscenity in *Milky Way Productions, Inc.* v. *Leary* (1969) 305 F.Supp. 288, 295-297, affirmed sub nom, *New York Feed Co., Inc.* v. *Leary* (1970) 397 U.S. 98 [25 L.Ed.2d 78, 90 S.Ct. 817].

The court in *Milky Way Productions, Inc.* v. *Leary* characterized the asserted requirement of a preliminary adversary hearing as a "novelty" that had gained acceptance in several courts, but it could find nothing in the First Amendment to mandate its acceptance of such an innovation, concluding that "traditional criminal prosecutions, with their procedural safeguards, are surely permissible, and very possibly preferred, vehicles for enforcing bans against obscenity." The court then ruled: "At any rate, we find no warrant in the First Amendment or the cases that give it full meaning for compelling the radical change plaintiffs seek in state (and, presumably, federal) criminal procedures affecting obscenity cases." (*Milky Way Productions, Inc.* v. *Leary, supra,* p. 297.)

There have been a number of opinions entered by the federal district courts of California requiring magistrates to conduct prior adversary hearings before issuing a search warrant. On March 29, 1971, the United States Supreme Court vacated the Ninth Circuit Court of Appeals affirmance of those opinions (*Demich, Inc.* v. *Ferdon* (1970) 426 F.2d 643). (See *Ferdon* v. *Demich, Inc.* (1971) 401 U.S. 990 [28 L.Ed.2d 528, 91 S.Ct. 1223].)

---

[1] In *Younger* v. *Harris* (1971) 401 U.S. 37 [27 L.Ed.2d 669, 91 S.Ct. 746], the United States Supreme Court held that a federal court must not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution.

The language from the *de Renzy* opinion relied upon by the appellate department is clearly dicta, uttered without citation of authority and is in direct conflict with the holding of that case and an accepted line of authority supporting narrow evidentiary seizures. (See *Mishkin* v. *New York* (1966) 383 U.S. 502, 513 [16 L.Ed.2d 56, 64-65, 86 S.Ct. 958], and *Rage Books, Inc.* v. *Leary* (1969) 301 F.Supp. 546.)

There remains for disposition the order made herein whereby all the publications that were not named in the search warrant were to be returned to the defendant. Such order was improper and must be vacated under the holding of *Aday* v. *Superior Court, supra,* p. 800.

The judgment reversing the municipal court order which denied the motion to suppress certain allegedly obscene books and magazines is reversed. The order of the municipal court directing the return of such obscene material as was not named in the search warrant is vacated.

Taylor, J., and Kane, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 13, 1971. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.