[Civ. No. 12087. Fourth Dist., Div. Two. Nov. 9, 1972.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
FREDERICK ARNOLD LOAR et al., Real Parties in Interest.

[Crim. No. 5616. Fourth Dist., Div. Two. Nov. 9, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
FREDERICK ARNOLD LOAR et al., Defendants and Respondents.

(Consolidated Cases.)

**COUNSEL**

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, for Petitioner, and for Plaintiff and Appellant.

No appearance for Respondent.

F. Filmore Jaffe and Saul J. Bernard for Real Parties in Interest and for Defendants and Respondents.

## OPINION

**TAMURA, J.**—Police officers of the City of Westminster seized vast quantities of motion picture films, still photos and records from real parties in interest (hereafter defendants) pursuant to two search warrants. In due course an information was filed charging defendants with conspiracy to prepare, publish, distribute and exhibit obscene matter in violation of Penal Code section 311.2, and with a misdemeanor count of possession of obscene material in violation of the section. A jury trial resulted in a "not guilty" verdict on both counts. Defendants thereupon moved for return of all seized materials, most of which remained in possession of the Westminster Police Department. The court granted the motion and ordered the district attorney and the Chief of Police of the City of Westminster to return all material seized under the two search warrants. Following entry of the order, the People forthwith filed a notice of appeal. Contempt proceedings were thereafter instituted against the district attorney, one of his deputies, and the chief of police for refusal to comply with the order.

Three matters stemming from the order to return are now before us: (1) A petition for a writ of prohibition to restrain the court below from threatened enforcement of the order through contempt proceedings; (2) petition for a writ of review to annul an order adjudging the chief of police in contempt for failure to return the seized materials;[1] and (3) defendants' motion to dismiss the People's pending appeal from the order to return.

The following events led to these proceedings:

Westminster police officers obtained a search warrant from a municipal court judge for the seizure of 10 identified films from defendants. In the execution of the warrant, the officers observed huge quantities of other

---

[1]Prohibition and writ of review are sought by a single petition in the name of the People. Relief is actually sought on behalf of the district attorney, a deputy district attorney and the Chief of Police of the City of Westminster but since defendants have not seriously challenged People's standing to file the petition on behalf of the officers, for the purpose of this opinion, standing will be assumed.

films, still pictures and records. They thereupon obtained a second search warrant and seized some 20,000 films, thousands of still pictures, and records. Defendants made motions in the municipal court to quash the two search warrants. The motion to quash was denied as to the first warrant but a separate motion as to the second was granted insofar as the seizure of films was concerned. Following a preliminary hearing at which the films seized under the first warrant were introduced into evidence, the magistrate determined that there was probable cause to believe the films to be obscene and bound defendants over to the superior court.

Upon the filing of the information, de novo hearings were held on the validity of the seizures. The superior court ruled that seizures under both warrants were valid. Defendants unsuccessfully sought successive writs from this court to review and set aside orders denying their motion to suppress and granting the People's motion under Penal Code section 1538.5, subdivision (j).

At the trial, in addition to the films seized under the first search warrant, the prosecution introduced into evidence 12 of the films seized under the second search warrant.[2] Immediately following the not guilty verdicts, defendants orally moved in open court for the return of all seized materials. The court forthwith ordered return of the films introduced into evidence but, with respect to the remainder, directed defendants to file an inventory of the items claimed to be in possession of the district attorney and chief of police together with a memorandum of authorities in support of the motion. The People were granted leave to file a responding memorandum. Following filing of the inventory and memoranda, the matter was submitted and the court made its order directing the district attorney and chief of police and their subordinates to return forthwith to defendants all material seized under the two search warrants. Upon entry of the order, the People filed a notice of appeal.

Defendants thereafter instituted contempt proceedings against the district attorney, one of his deputies and the chief of police for willful failure to comply with the return order. Following hearing on the order to show cause, the court dismissed the contempt proceedings against the district attorney and his deputy; the dismissal as to the district attorney was for lack of proof of service of the order to show cause and the dismissal as to the deputy was for lack of any evidence of contempt. The chief of police, however, was adjudged guilty of contempt but imposition of sentence was suspended for 60 days.

Upon the filing of the People's petition herein for prohibition and review,

---

[2]This fact was stipulated to by the parties during oral argument before this court.

we issued an alternative writ and stay order. Meanwhile, defendants moved to dismiss the People's appeal from the return order on the ground it was nonappealable. We ordered the order to show cause and the motion to dismiss the appeal consolidated for hearing and disposition by a single opinion.

Insofar as it seeks a writ of prohibition, the People's petition goes directly to the heart of the present controversy, namely, the validity of the return order. We therefore address ourselves to the matters before us in the following order: First to petitioner's entitlement to a writ of prohibition; then to the petition for writ of review; and finally to defendants' motion to dismiss the People's appeal from the return order.

I

PETITION FOR WRIT OF PROHIBITION

The People seek to enjoin the threatened imposition of sentence for contempt as against the chief of police and the institution of further contempt proceedings against the district attorney and his deputy on the ground the court had no jurisdiction to make the order on which the contempt proceedings were based. As to the chief of police, it is further urged that the court lacked jurisdiction to adjudge him guilty of contempt because the appeal from the order to return operated as a stay.

■ Prohibition is an appropriate remedy to stay contempt proceedings where it is manifest from previous acts of the court that it will proceed notwithstanding the fact that it lacked jurisdiction to make the order on which the contempt proceeding is based (*Commercial Bk. etc.* v. *Superior Court,* 192 Cal. 395, 397 [220 P. 422]; *Andrews* v. *Superior Court,* 103 Cal.App. 360, 366 [284 P. 494]; *Pennell* v. *Superior Court,* 87 Cal.App. 375, 378 [262 P. 48]) or that the purported order was nonexistent or inoperative. (*Miller* v. *Superior Court,* 9 Cal.2d 733, 736 [72 P.2d 868]; *Ketscher* v. *Superior Court,* 9 Cal.App.3d 601, 604 [88 Cal.Rptr. 357].) The petition for writ of prohibition thus properly raises both the validity of the return order and the question whether the People's appeal therefrom operated as a stay.

A. *Validity of the order to return.*

Although the People do not question the order insofar as it pertained to the release of the films actually introduced into evidence (Pen. Code, §§ 1417-1418.5), they challenge the power of the court to order return of the seized materials which were not introduced into evidence and which remain in possession of the chief of police on two grounds: (1) The court

lacked jurisdiction to entertain a summary proceeding in the criminal action for return of the seized materials and (2) defendants were not entitled to have the seized materials returned absent a prior judicial determination that they were not obscene. For the reasons which follow, we reject both grounds.

### 1. *Jurisdiction to entertain motion for return.*

■ The People urge that with respect to the seized materials which were not introduced into evidence, the only remedy available for their return was a proceeding in mandate or a civil action for their recovery. While independent civil remedies were available (see *People* v. *Luros,* 4 Cal.3d 84, 88 [92 Cal.Rptr. 883, 430 P.2d 633]; *Aday* v. *Superior Court,* 55 Cal.2d 789, 799 [13 Cal.Rptr. 415, 362 P.2d 47]; *Franklin* v. *Municipal Court,* 26 Cal.App.3d 884, 897 [103 Cal.Rptr. 354]; *Williams* v. *Justice Court,* 230 Cal.App.2d 87, 94 [40 Cal.Rptr. 724]; *People* v. *Gershenhorn,* 225 Cal.App.2d 122, 126 [37 Cal.Rptr. 176]; *Aday* v. *Municipal Court,* 210 Cal.App.2d 229, 249 [26 Cal.Rptr. 576] [mandate]; see *People* v. *Gershenhorn, supra; Modern Loan Co.* v. *Police Court,* 12 Cal. App. 582, 587 [108 P. 56] [claim and delivery]), we cannot agree that they were exclusive.

The court derived its power to entertain the motion for return of the seized items from Penal Code section 1536 as well as from its inherent power "to control and prevent the abuse of its process." (See *Buker* v. *Superior Court,* 25 Cal.App.3d 1085, 1089 [102 Cal.Rptr. 494].) Section 1536 provides that property seized under a search warrant "must be retained by the officer in his custody, subject to the order of the court to which he is required to return the proceedings before him, or of any other court in which the offense in respect to which the property or things taken is triable."[3]

The People contend that section 1536 could not have been the source of the superior court's power to make the questioned order after the trial of the criminal action was concluded because (1) the offense in respect to which the property was taken was then no longer "triable" in the superior court within the meaning of the section and (2) summary proceedings for return by motion did not lie after the trial was concluded because the seized materials were then no longer *in custodia legis.*

---

[3] Penal Code sections 1528 and 1536 which direct the officer executing the search warrant to retain custody of the seized property subject to the order of the court prevails over conflicting language in Penal Code sections 1523 and 1529 directing the officer to deliver the property to the magistrate. (*Williams* v. *Justice Court, supra,* 230 Cal.App.2d 87, 99-100.)

The People's strained interpretation of the word "triable" not only does violence to the language of section 1536 but would impede the orderly and efficient administration of justice. The section provides that the seizing officer shall hold the property subject to the order of the court to which he is required to make the return or to "any other court in which the offense in respect to which the property or things taken is triable." Conspiracy to violate Penal Code section 311.2 is a felony "triable" in the superior court. The character of the offense for which the evidence was seized and held was not altered by the fact that the case had been tried; it was still an offense triable in the superior court. The superior court therefore retained the power to act pursuant to section 1536.

Furthermore, the end of speedy and efficient administration of justice would be frustrated by holding that the superior court's power to act under section 1536 somehow vanished with the verdicts of acquittal and that the owners should be relegated to a motion in the municipal court which issued the search warrant. Judge Corfman, the superior court judge before whom the motion was made, was better qualified to pass upon it than the municipal court which issued the search warrant in that having been the judge who heard the pretrial motions in the superior court relating to the validity of the seizures and having presided over the trial, he was familiar with the controverted issues, knew what evidence had been adduced by the People and knew the identities of the persons from whose possession the seized materials had been taken and to whom they purportedly belonged. Those considerations take on added significance in the instant case in view of the People's contention that the seized materials were nonreturnable because they were probably contraband, an issue to which we shall shortly address ourselves.

We conclude that the fact the trial of the criminal action had been completed did not deprive the superior court of the power to entertain the motion for return either pursuant to section 1536 or in the exercise of its inherent power to prevent the abuse of court processes.

We turn to the People's contention that the court lacked the power to entertain a summary proceeding for return because the seized materials, not having been introduced into evidence, were not *in custodia legis*. The argument presupposes that the chief of police had some claim to or right to possession of the seized material apart from his limited custodial rights under the search warrant. However, an officer seizing and holding property under a search warrant does so on behalf of the court; possession by the officer is in contemplation of the law possession by the court. (*Gershenhorn* v. *Superior Court*, 227 Cal.App.2d 361, 366 [38 Cal.Rptr. 576].)

It is clear that during the pendency of a criminal action, section 1536 may provide the jurisdictional basis for a nonstatutory motion for release of property seized under a search warrant. In *Buker* v. *Superior Court, supra,* 25 Cal.App.3d 1085, the court held that section 1536 empowered the superior court to entertain a summary proceeding by "nonstatutory" motion for the return, on good cause shown, of property (cash) legally seized under a search warrant, adding moreover that such power was "within the scope of the inherent power of the court to control and prevent the abuse of its process." (25 Cal.App.3d at p. 1089.)

It is true that in *Buker* v. *Superior Court, supra,* 25 Cal.App.3d 1085, the property had been introduced into evidence at the preliminary hearing and had been transferred to the superior court when petitioner was bound over. But in *Gershenhorn* v. *Superior Court, supra,* 227 Cal.App.2d 361, a summary proceeding by nonstatutory motion for return of property seized incident to petitioner's arrest was held to be an appropriate remedy even as to property still in possession of the seizing officer and not introduced into evidence in the grand jury proceeding leading to petitioner's indictment. The court rejected the identical contention now urged by the People that the owner should be relegated to an independent civil action, stating: "And the expense and complications of bonds and other procedures involved in claim and delivery seem an unnecessary apparatus to recover property which, as we shall show, is already in the hands of the court."[4] In holding that judicial control extended even to property not yet offered or received in evidence, the court stated: "We deal with property seized by a public officer, acting under the color of his status as a law enforcement officer, and seized solely on the theory that it constitutes a part of the evidence on which judicial action against its owner or possessor will be taken. We regard property so taken and so held as being as much held on behalf of the court in which the contemplated prosecution will be instituted as is property taken and held under a warrant. The seizing officer claims no right in or to the property, or in or to its possession, save and except as the court may find use for it. He must respond, as does any custodian, to the orders of the court for which he acted." (227 Cal.App.2d at p. 366.)

The fact that both *Buker* v. *Superior Court, supra,* 25 Cal.App.3d 1085, and *Gershenhorn* v. *Superior Court, supra,* 227 Cal.App.2d 361, involved pretrial motions whereas the instant case involves a post-trial

---

[4]The claim and delivery statute was invalidated in its entirety by *Blair* v. *Pitchess,* 5 Cal.3d 258, 283 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]. The 1972 Legislature redrafted the statute by the enactment of A.B. 1623 as an urgency measure. The bill was signed by the Governor on August 14, 1972. (Stats. 1972, ch. 855.)

motion is not of controlling significance insofar as it relates to the propriety of a summary proceeding under Penal Code section 1536 for return of property held under a search warrant. The final determination of the criminal action in the instant case did-not confer on the seizing officer any right to retain the property independent of and beyond that derived from the search warrant.

The cases cited by the People (*People* v. *Tuttle,* 242 Cal.App.2d 883 [52 Cal.Rptr. 204]; *People* v. *Lawrence,* 140 Cal.App.2d 133 [295 P.2d 4]; and *Modern Loan Co.* v. *Police Court, supra,* 12 Cal.App. 582) for the proposition that a summary proceeding in the case at bench was improper are clearly inapposite. Unlike the present case, those cases involved stolen or embezzled property where ownership was subject to conflicting claims. The distinction is of controlling significance in determining the propriety of a summary proceeding to secure release of property in the custody of the court. (See *Franklin* v. *Municipal Court, supra,* 26 Cal. App.3d 884, 895.) *Franklin, supra,* involved an interpretation of Penal Code section 1418 pertaining to the return of exhibits after final determination of an action or proceeding. Petitioner was there charged with assault with intent to commit murder (Pen. Code, § 217) and at the preliminary hearing a revolver seized at the time of his arrest was introduced into evidence. Following the preliminary hearing, the magistrate dismissed the complaint but ordered the gun confiscated. Upon the magistrate's refusal to return the gun on petitioner's demand, he sought a writ of mandate against the magistrate to compel return of the weapon. The petition was denied and petitioner appealed. Although the judgment was affirmed because the uncontroverted allegations of the return of the alternative writ revealed that at the time petitioner demanded return of the gun, it was not in the magistrate's custody or within the jurisdiction of the municipal court, the court held that section 1418 was enacted to provide an efficient and efficacious procedure whereby a person entitled to exhibits may secure their return and imposes a mandatory duty on the court to return them on proper application. The court rejected the suggestion that an independent proceeding was the exclusive remedy, stating: "To require that a collateral hearing be held on notice for the purpose of returning an exhibit in the case to the person entitled thereto would be cumbersome, costly and time-consuming. Where the trial court is in doubt as to whether the person claiming the exhibit is entitled to it, or if there are conflicting claims to the exhibit, the court may refuse to return the exhibit. Upon such refusal the party claiming the exhibit has available to him review by writ of mandate to determine whether the court was justified in refusing to return the exhibit to him. (See *People* v. *Gershenhorn,* 225 Cal.App.2d

122, 126 [37 Cal.Rptr. 176]; *Gershenhorn* v. *Superior Court,* 227 Cal. App.2d 361, 364, 367, fn. 1 [38 Cal.Rptr. 576].) In the alternative he may institute a civil action for recovery of his property by a civil action in conversion. (*People* v. *Gershenhorn, supra,* at p. 126.)" (26 Cal.App.3d at p. 897.) The *Franklin* rationale ought to apply with equal force to an owner seeking release of his property under section 1536 after final favorable determination of the action for which the property was seized and held for use as evidence.

The People urge that *Franklin* supports their contention that once the criminal action is finally determined, the court lacks jurisdiction to entertain a summary proceeding for the disposition of property seized and held for use as evidence. We do not so view *Franklin.* The affirmance of the judgment denying the writ of mandate was based, not on the fact that criminal proceedings had been finally determined when petitioner demanded return of the gun, but on the uncontroverted allegations of the return to the alternative writ that the gun was not then in the magistrate's custody or within the jurisdiction of the municipal court. (26 Cal.App.3d at p. 898.) *Franklin* is contrary to rather than supportive of the People's position in the present case.

The People contend that *Barnard* v. *Municipal Court,* 142 Cal.App.2d 324 [298 P.2d 679], is controlling authority for the proposition that once the criminal action for which seized property is held for use as evidence is finally determined, the property is no longer *in custodia legis* and that an independent civil action or proceeding is the owner's exclusive remedy. In *Barnard* petitioner was prosecuted in the municipal court for a violation of Penal Code section 311.2. Allegedly obscene publications which were seized at the time of petitioner's arrest were introduced into evidence at the trial. Upon petitioner's acquittal, he sought writs of prohibition and mandate in the superior court alleging that the municipal court was threatening to order destruction of the seized material. The superior court denied the petition on the ground an adequate remedy existed by way of a claim and delivery action. On appeal, the only issue considered was whether an action for claim and delivery would lie. Petitioner contended that such action did not lie because the property was *"in custodia legis"* and that therefore the trial court abused its discretion in denying the writ. The reviewing court rejected the contention stating that "[p]rior to defendant's trial and while they [the seized materials] were being held as evidence they were in such custody [*custodia legis*], but now that they are no longer required for that purpose they are not in such custody, . . ." (142 Cal. App.2d at p. 327.) The court concluded that a claim and delivery action could have been maintained and that the denial of the extraordinary writ was not an abuse of discretion.

■ *Barnard, supra,* is not controlling on the issue presented in the instant case. It simply stands for the proposition that property seized and held for use as evidence in a criminal prosecution is no longer immune from a claim and delivery action upon final determination of the action. But the fact that property may no longer be *in custodia legis* in the sense that it enjoys immunity from a claim and delivery action, a writ of attachment or levy of execution does not mean that it is no longer subject to judicial control and disposition by summary proceeding when, as in the present case, it was seized and being held under a search warrant. "*Custodia legis*" is a legal principle evolved to prevent outside interference with a court's jurisdiction to deal with property in its custody, it is not a principle designed to govern the court's dispositional power over such property. Moreover, the court in *Barnard* did not have before it the question of the availability of a summary proceeding for return of exhibits under Penal Code section 1418 (see *Franklin v. Municipal Court, supra,* 26 Cal. App.3d 884), nor, since the property was not held under a search warrant, the propriety of a motion for release under Penal Code section 1536.

■ We conclude that the court below had jurisdiction to entertain defendants' motion for return of the seized materials.

2. *Power to order release without determination of contraband character of films.*

■ We turn to the People's substantive attack upon the return order. It is urged the court lacked the power to order release of the seized films because (1) the magistrate in Penal Code sections 1539-1540 proceedings found them to be obscene and (2) even assuming such determination had not been made by the magistrate, under *Aday v. Superior Court, supra,* 55 Cal.2d 789, it was improper to order their restoration to defendants without a judicial determination that they were not contraband.

Though not raised in the brief, at oral argument, the People urged that the magistrate who heard the motion to quash the second search warrant granted the motion but declined to order return of the seized films because he found them to be obscene. The record, however, reveals that the magistrate not only made no implied finding on obscenity, he expressly excluded such implication. In refusing to order return of the seized films after granting motion to quash, the magistrate stated: "You will have to make a motion to have them returned"[5] and went on to explain the limited scope of his ruling in granting the motion to quash the second search warrant as

---

[5]The record discloses that at the outset of the proceedings, the magistrate indicated that the only motion he would entertain at that hearing was the "Motion to Quash."

follows: "My ruling is that the search after the initial Baker warrant [first search warrant] exceeded the scope of the Baker warrant and that the information in the affidavit was gained by an excessive search pursuant to the Baker warrant. *I make no holding as to the merit of the material or anything else.*" (Italics supplied.) It is thus abundantly clear that the magistrate's refusal to order return of the films was not predicated on a finding that the films were obscene. People's contention that the magistrate had found the materials to be obscene and therefore contraband is not supported by the record.

The question remains whether the court was empowered to release the films without making a determination that they were not contraband. The People contend that *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, requires such a determination before return of the property.

*Aday* v. *Superior Court, supra,* 55 Cal.2d 789, involved a mass seizure of books pursuant to a search warrant. The court upheld the seizure as to books identified in the warrant but invalid as to those not identified. However, the court declined to order return of the illegally seized books, stating that if they were obscene they were contraband and the owner would not be entitled to their return. The court remanded the matter to the municipal court where a motion to traverse the search warrant was pending with directions to make a determination of the contraband character of the books. For the reasons which follow, we have concluded that the People's reliance on *Aday* is misplaced.

Unlike *Aday,* in the present case a final judicial determination on the fact of obscenity occurred in the criminal action in respect to which the seized films were held for use as evidence. In an excellent summation of his reasons for granting defendants' motion for return of the seized materials, Judge Corfman recalled that the only issue in dispute in the trial of the criminal action was whether the seized films were obscene and observed that it was only reasonable to presume that the 12 films the district attorney selected for jury viewing from the mass of films seized under the second search warrant were those which he felt depicted the most aggravated conduct.[6] At the very least the films selected must have been those

---

[6]In his summation of the jurisdictional basis for his order to return the seized materials, Judge Corfman stated:

"The main issue, of course, at the trial, everything was more or less cut and dried, whether the films were legally obscene. The jury found that the defendants were not guilty, and the only inference you can make is that they found that the films were not obscene because there was really nothing else in dispute.

"Now, in the course of the trial the District Attorney presented in evidence approximately 22 of these films. Now, the District Attorney had a choice of selection, in that he had in his possession or under his control some 20,000 films, and one would

which the district attorney deemed representative of the vast quantities seized. That this was what actually happened is virtually conceded by the People. In the petition before us, the People allege: "The only evidentiary items placed in evidence from the seizure under Judge Smith's warrant [second search warrant] were some ten movies which were introduced to show that *other similar materials were being sold by defendants.*" (Italics supplied.) In view of the nature of the charges (possession with intent to distribute obscene matter as well as conspiracy) and the fact that the only real issue in dispute was whether the films were obscene, the verdicts of acquittal on both counts were tantamount to a jury determination that the seized films were not obscene even though all 20,000 were not actually introduced into evidence.[7] Given the constraints of time and expense, it is difficult to conceive of a more reasonable procedure for determining the character of a massive quantity of similar films other than by introducing a few representative samples as was done in the instant case. In the circumstances of the present case, further retention of the seized materials cannot be justified on the theory that a judicial determination on the contraband character of the films has not been held. In view of the jury verdicts, the trial judge was virtually compelled to grant the motion for return. Official retention of seized materials *found* to be not obscene would be a

---

assume that he is seeking to obtain a conviction and would assume that he is going to present the strongest evidence he has in an effort to obtain that conviction. I don't think any other assumption could be made. It certainly wouldn't be logical that he would take the most innocuous films out of the 20,000 and present them.

"So, if the films that have been presented into evidence are found not to be obscene, the only reasonable conclusion that can be made is that the balance of the films are not obscene.

"Now, there is nothing else wrong with the films. They are not contraband like dope or pills or dangerous things like guns. If they are not obscene, there is nothing wrong with them. So, there would be no valid or legal reason for the District Attorney or the Chief of Police to refuse to return the property to the owners or the former defendants. Of course, when the defendant went there and asked for his property back, the Chief of Police told him he couldn't have it. So, upon request of his attorney he had sought the aid of the Court and legal process to regain his property.

"So, it gets down to the issue of what is the proper method in such a case to get your property back. Now, we are aware of the legal proceedings of claim and delivery, whereas in the multitude of cases cited by Mrs. Sears the police department or some other official has seized or taken possession of private property and then done nothing with it except to hold it, and then the owner decides he wants his property back, so, he must file the civil proceedings in civil court to get it back.

"The question is whether the defendant here must start that proceeding, a long and drawn out whole new lawsuit in order to get back property that is rightfully his, that has no purpose in the possession of the police department."

[7]The fact that the People not only did not question the propriety of the court's order to return the films actually introduced into evidence but represent that there has been compliance with that order indicates the People's concurrence in Judge Corfman's statement that the only issue in dispute at trial was whether the materials were obscene.

patent denial of due process. (See *Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229, 247.)

Even accepting, arguendo, the People's position that the character of the films which were not introduced into evidence was not determined by the verdicts of acquittal, the order to return was nevertheless not only proper but constitutionally compelled.

The state may, of course, regulate or suppress sale or distribution of obscene matter. (*United States* v. *Reidel,* 402 U.S. 351, 354 [28 L.Ed.2d 813, 816-817, 91 S.Ct. 1410]; *Roth* v. *United States,* 354 U.S. 476, 485 [1 L.Ed.2d 1498, 1507, 77 S.Ct. 1304]; *People* v. *Luros, supra,* 4 Cal.3d 84, 93.) ■ But "since obscenity is often separated from constitutionally protected expression by only a 'dim and uncertain line' (*Bantam Books, Inc.* v. *Sullivan* (1963) 372 U.S. 58, 66 [9 L.Ed.2d 584, 590, 83 S.Ct. 631]), purported obscenity maintains, until such time as it is judicially determined to be unprotected speech, the same 'preferred position' as does free speech generally (*Murdock* v. *Pennsylvania* (1943) 319 U.S. 105, 115 [87 L.Ed. 1292, 1300, 63 S.Ct. 870, 146 A.L.R. 81]) and the ordinary rules of search and seizure are inapplicable to it." (*Flack* v. *Municipal Court,* 66 Cal.2d 981, 989 [59 Cal.Rptr. 872, 429 P.2d 192].) Rules which have been developed for the seizure and retention of contraband such as narcotics, gambling paraphernalia, burglary tools and intoxicating liquor are not equally applicable to allegedly obscene materials. (*Marcus* v. *Search Warrant,* 367 U.S. 717, 731 [6 L.Ed.2d 1127, 1135-1136, 81 S.Ct. 1708]; *Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229, 244; *Cinema Classics, Ltd.* v. *Busch* (February 22, 1972) 339 F. Supp. 43, affd. *sub nom. Busch* v. *Cinema Classics, Ltd.,* and *Davis* v. *Cinema Classics, Ltd.* (October 10, 1972) 409 U.S. 807 [34 L. Ed.2d 66, 93 S.Ct. 105].) As the three-judge federal district court in *Cinema Classics, supra,*[8] aptly stated: "True contraband of the types mentioned can be quickly and easily recognized by officers operating in the field. Even as to narcotics, relatively simple field tests can be made. No simple tests exist to determine obscenity. Allegedly obscene materials are things used for the communication of ideas and partake of First Amendment characteristics far more than they do the characteristics of traditional contraband. Because they are presumptively First Amendment materials and are not easily recognizable, the same breadth of official action concerning their seizure and retention cannot be tolerated as is permitted in the case of true contraband." (339 F.Supp. at p. 49.)

[8]The three judges were Circuit Judge Ely and District Judges Hill and Curtis, with opinion per Hill, J.

■ · One of the due process protections surrounding the seizure of material presumptively protected by the First Amendment is the right of the owner to a prompt pretrial adversary hearing on the issue of obscenity (*Marcus* v. *Search Warrant, supra,* 367 U.S. 717), and a denial of that right requires restoration of the material to the owner. (*Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229; see *People* v. *Aday,* 226 Cal.App.2d 520, 529, 530-531 [38 Cal.Rptr. 199].) In *Aday* v. *Municipal Court, supra,* the court concluded that statements in *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, concerning official retention of allegedly obscene material where the owner had been denied a prompt evidentiary adversary hearing on the issue of obscenity were inconsistent with *Marcus,* stating: "We are satisfied that the rationale of the *Marcus* opinion requires that a determination of the question of obscenity be made after hearing of factual evidence (if requested) and before the trial of the case; . . . That is the purport of the *Marcus* discussion of 'sensitive tools' essential to separation of legitimate from illegitimate speech (p. 731). As previously stated, *it is incumbent upon this court to order immediate return to petitioners of all seized articles regardless of what their actual character be, whether pornographic or nonpornographic.*" (Italics supplied.) (210 Cal.App.2d at p. 249.) The *Aday* v. *Municipal Court* opinion reviewed the subsequent history of *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, and noted that on remand from the Supreme Court the municipal court refused to hold a hearing to determine the contraband character of the books as directed basing its refusal on *Marcus* which had been decided in the interim; that the People sought a writ of mandate alleging that the municipal court ordered return of the books without complying with the mandate of the Supreme Court and without making any determination on the obscenity of the books; that the petition was denied; and that the Supreme Court denied a hearing. The Court of Appeal viewed the denial of a hearing as an implied recognition by our high court of "the controlling authority of *Marcus.*" Significantly, the Supreme Court also denied a hearing in *Aday* v. *Municipal Court, supra.* Thus, at the very least, *Aday* v. *Municipal Court, supra,* stands for the proposition that denial of a prompt pretrial adversary hearing on the issue of obscenity, when requested by the owner, constitutes a denial of due process and compels restoration of the seized materials. (See *People* v. *Aday, supra,* 226 Cal.App.2d 520, 530.)

A pretrial adversary hearing on obscenity, however, determines no more than probable cause, not obscenity in fact. (*People* v. *Sarnblad,* 26 Cal. App.3d 801, 807 [103 Cal.Rptr. 211]; *People* v. *Golden,* 20 Cal.App.3d 211, 215 [97 Cal.Rptr. 476].) "Even a prior adversary hearing before the issuing magistrate does no more than establish the factor of probable cause for the warrant. It does not establish the *fact* of obscenity itself, or there

would be no need for the trial." (*People* v. *Golden, supra.*) In *People* v. *Luros, supra,* 4 Cal.3d 84, the court held that evidence of contemporary community standards is not required to establish probable cause and in reaching that conclusion, reaffirmed (at p. 88) the following statements from *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, at page 799: "Where, as here, the seizure occurs under a warrant, an ex parte determination of the issue of obscenity, so far as *probable cause* is concerned, has taken place before issuance of the warrant, and immediately after the seizure a determination of the issue *to that extent* can be obtained in adversary proceedings by controverting the warrant under sections 1539 and 1540 of the Penal Code." (Italics supplied.) The clear import of the foregoing cases is that where allegedly obscene materials are seized for use as evidence in a criminal prosecution for violation of obscenity laws, a pretrial adversary hearing on obscenity extends only to the establishment of probable cause.

█ In the instant case pretrial motions to suppress and to return the seized materials were made and denied. But, from the limited record before us, it appears that the scope of those hearings was limited to the validity of the search warrants and did not include a request for a hearing on or encompass the issue of obscenity. However, probable cause was determined by a magistrate at the preliminary hearing when defendants were bound over and defendants' subsequent Penal Code section 995 motion in the superior court was denied. Probable cause was, therefore, determined, at least as to the 10 films seized under the first warrant.

However, in addition to a prompt pretrial adversary hearing on the issue of probable cause, due process entitles the owner to a final judicial determination on the issue of obscenity within a reasonable time after seizure. This is the clear implication of *Freedman* v. *Maryland,* 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734]; *Marcus* v. *Search Warrant, supra,* 367 U.S. 717; *Aday* v. *Superior Court, supra,* 55 Cal.2d 789; and *Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229. Referring to the Supreme Court decision in *Aday* v. *Superior Court, supra,* the Court of Appeal in *Aday* v. *Municipal Court, supra,* states: "*Aday* also says that in the event the owner is unsuccessful in that proceeding [pretrial adversary hearing] 'a final determination as to obscenity will be had in the criminal action which will ordinarily follow *within a reasonable time,* or other remedies such as mandamus will be available to secure return of the property' . . . and that '[t]hese various remedies satisfy the requirements of due process. . . .' " (Original italics.) (*Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229, 248-249.)

In *Freedman* v. *Maryland, supra,* 380 U.S. 51, the court struck down a motion picture censorship statute because it failed to meet the following

criteria for safeguarding First Amendment rights: (1) The burden of proving that the films are unprotected must rest with the state; (2) only a procedure requiring a judicial determination will justify imposition of a final restraint; and (3) any restraint in advance of a final judicial determination on the merits must be limited to "preservation of the status quo for the shortest fixed period compatible with sound judicial resolution."

While *Freedman* v. *Maryland, supra,* 380 U.S. 51, involved a censorship statute whereas the instant case involves a criminal prosecution, the principles therein adumbrated for safeguarding First Amendment rights apply with equal force here. As our high court stated in *Flack* v. *Municipal Court, supra,* 66 Cal.2d 981, 989, fn. 8: "It cannot be said that searches pursuant to criminal obscenity proceedings are any less onerous a prior restraint than those made in connection with civil *in rem* actions against the obscene matter itself. As observed by the court in *Evergreen Review, Inc.* v. *Cahn* (E.D.N.Y. 1964) 230 F.Supp. 498, 504, 'It would be illogical and inconsistent to suppose that prior restraints upon distribution of publications would be unconstitutionally tainted under a . . . civil proceeding, yet be free from such taint under a . . . conventional criminal proceeding.' (See also *Redrup* v. *New York* (1967) 386 U.S. 767, 770 [18 L.Ed.2d 515, 518, 87 S.Ct. 1414].)" The establishment of probable cause that presumptively protected materials may offend a criminal statute may justify their official sequestration pending final judicial determination of obscenity in fact in the criminal action but the final determination on the merits may not be deferred for an unreasonable or indefinite period. Prompt trial on the merits is particularly urgent where, as in the instant case, there has been a *mass seizure* of presumptively protected material.[9] Seizure and retention by the state in such cases clearly constitute prior restraint on the exercise of free speech (*Marcus* v. *Search Warrant, supra,* 367 U.S. 717; *A Quantity of Books* v. *Kansas, supra,* 378 U.S. 205) and official sequestration without prompt institution of proceedings leading to a final judicial determination on the merits within a reasonable time transgresses First Amendment rights.

In the present case almost a year elapsed between seizure and the order

---

[9]Although the issue before us is the validity of retention and not of the seizure, it should be noted that massive seizures of presumptively protected materials have been viewed critically by the United States Supreme Court (*Marcus* v. *Search Warrant, supra,* 367 U.S. 717; *A Quantity of Books* v. *Kansas,* 378 U.S. 205 [12 L.Ed.2d 809, 84 S.Ct. 1723]) and in *Cinema Classics, Ltd.* v. *Busch, supra,* 339 F.Supp. 43, affd. *sub nom. Busch* v. *Cinema Classics, Ltd.* and *Davis* v. *Cinema Classics, Ltd.* (Oct. 10, 1972) *supra,* 409 U.S. 807 was held invalid absent a prior adversary hearing on obscenity.

to return. Consequently, even if it be assumed, as proposed by the People, that the jury verdicts of acquittal in the criminal action were not a final judicial determination on obscenity with respect to the films not introduced into evidence, continued official retention with no further criminal action pending or contemplated would be violative of the owners' First Amendment and due process rights and would require restoration of the seized items. (See *Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229, 249; *Cinema Classics, Ltd.* v. *Busch, supra,* 339 F.Supp. 43, affd. *sub nom. Busch* v. *Cinema Classics, Ltd.* and *Davis* v. *Cinema Classics, Ltd.* (Oct. 10, 1972) *supra,* 409 U.S. 807.)

*Cinema Classics, Ltd.* v. *Busch, supra,* involved massive seizures of films by city and county law enforcement officers pursuant to search warrants. Despite the fact that some six weeks had elapsed from the date of seizure by city officers, no arrests had been made and no criminal prosecution had been commenced as a result of that seizure. The court held that under the circumstances massive seizures without a prior adversary hearing were invalid and further that federal intervention was not proscribed by *Younger* v. *Harris,* 401 U.S. 37 [27 L.Ed.2d 669, 91 S.Ct. 746]. The significant holding of *Cinema Classics, Ltd.* v. *Busch, supra,* insofar as the case at bench is concerned is the court's rejection of the state's contention that it was entitled to retain the films because they were contraband. The court observed that although there was some language in *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, supporting the state's position, it was implicitly rejected by *Marcus* v. *Search Warrant, supra,* 367 U.S. 717. A preliminary injunction was issued requiring return of all seized material, less a small amount needed as evidence of possible criminal violations.

*Cinema Classics, supra,* as has been noted, was summarily affirmed *sub nom. Busch* v. *Cinema Classics, Ltd.,* and *Davis* v. *Cinema Classics, Ltd.* (Oct. 10, 1972) *supra,* 409 U.S. 807 by the United States Supreme Court. ■ While a denial of a petition for certiorari imports no expression of opinion upon the merits of the case *(United States* v. *Carver,* 260 U.S. 482, 490 [67 L.Ed. 361, 364, 43 S.Ct. 181]; accord: *Brown* v. *Allen,* 344 U.S. 443, 496 [97 L.Ed. 469, 509, 73 S.Ct. 397]) and can have no proper precedential effect *(Maryland* v. *Baltimore Radio Show,* 338 U.S. 912, 919 [94 L.Ed. 562, 566, 70 S.Ct. 252]) a summary disposition of an appeal either by affirmance or a dismissal for want of a substantial federal question is a decision on the merits *(Ohio* ex rel. *Eaton* v. *Price,* 360 U.S. 246, 247 [3 L.Ed.2d 1200, 1202, 79 S.Ct. 978] [opinion of Brennan, J.]; *Ahern* v. *Murphy*

(7th Cir. 1972) 457 F.2d 363, 365; *Samson Market Co.* v. *Alcoholic Bev. etc. Appeals Bd.*, 71 Cal.2d 1215, 1221, fn. 4 [81 Cal.Rptr. 251, 459 P.2d 667]; Wright, Law of Federal Courts, 495; Gunther, *The Subtle Vices of the "Passive Virtues"—A Comment on Principle and Expedience in Judicial Review*, 64 Colum.L.Rev. 1, 11) and has value as precedent under the doctrine of *stare decisis.* (*Ohio* ex rel. *Eaton* v. *Price, supra; Samson Market Co.* v. *Alcoholic Bev. etc. Appeals Bd., supra; People* v. *United National Life Ins. Co.*, 66 Cal.2d 577, 591 [58 Cal.Rptr. 599, 427 P.2d 199]; *Two Guys from Harrison-Allentown, Inc.* v. *McGinley,* 179 F.Supp. 944, 949, fn. 4 [revd. on other grounds, 366 U.S. 582 (6 L.Ed.2d 551, 81 S.Ct. 1135)].)

Acceptance of the People's position would mean that once probable cause had been established for the seizure of presumptively protected materials, the state may retain the materials indefinitely without instituting proceedings leading to a final judicial determination on the fact of obscenity. The People suggest that the remedy of a civil action for return or proceeding in mandamus in which the owner would have the burden of proving the materials not obscene and therefore not contraband would satisfy due process. While those remedies would satisfy due process when dealing with ordinary contraband such as narcotics, gambling paraphernalia, burglary tools, etc., they do not comport with due process where materials presumptively protected by the First Amendment are involved. The teaching of *Freedman* v. *Maryland, supra,* 380 U.S. 51, is that the state must initiate proceedings leading to a final judicial determination on the question whether the materials are protected within a reasonable period compatible with sound judicial administration and that in such proceedings the burden of proving the materials to be unprotected "criminal speech" must be borne by the state. (*Freedman* v. *Maryland, supra,* 380 U.S. 51, 58 [13 L.Ed.2d 649, 654]; *Speiser* v. *Randall,* 357 U.S. 513, 526 [2 L.Ed.2d 1460, 1473, 78 S.Ct. 1332].) The state's position in the present case would deny those due process safeguards. Defendants were therefore entitled to have the seized materials returned to them.[10]

[10]In reaching our conclusion, we are mindful of *People* v. *Chapman,* 17 Cal.App. 3d 865 [95 Cal.Rptr. 242]. *Chapman* involved a misdemeanor prosecution for violation of Penal Code section 311.2. Pursuant to a search warrant, allegedly obscene books and magazines, some of which were not listed in the warrant, had been seized. The municipal court determined that the seizure of the unlisted books was illegal and ordered their return but denied the motion to suppress the listed items. Defendant appealed to the appellate department of the superior court seeking suppression of all items on the ground an adversary hearing was required before seizure of publications available for public sale. The appellate department agreed and ordered suppression of all seized books and magazines. The Court of Appeal accepted certification, held that an adversary hearing before seizure was not constitutionally required, and reversed the appellate department's order. In addition, however, the Court of Appeal held that

We conclude that the court below had jurisdiction to entertain a non-statutory motion for return of the seized materials and that the order to return is valid.

B. *Effect of appeal on court's jurisdiction to entertain contempt proceedings.*

■ The People's petition for writ of prohibition challenges the court's jurisdiction to try the chief for contempt on the further ground that the appeal from the order to return stayed its effectiveness.

The People contend that inasmuch as the court had no jurisdiction to make the order in the criminal action because trial had been concluded, the summary proceeding for return must somehow be treated as a proceeding in mandate and the order as an appealable judgment in mandate. We have already rejected People's contention that the court had no jurisdiction to entertain defendants' motion for return of the seized materials. People's contention that the order to return must be treated as a judgment in mandate must therefore fail.

Nor is the order otherwise appealable. Although it was an order made after judgment, it did not affect "the substantial rights of the People" with respect to the judgment in the criminal action. (Pen. Code, § 1238; *People* v. *Garcia,* 120 Cal.App.Supp. 767, 770 [7 P.2d 401].) Had the motion been denied, defendants could not have appealed from the order of denial. (See *People* v. *Mayen,* 188 Cal. 237, 251-252 [205 P. 435, 24 A.L.R. 1383]; *People* v. *Gershenhorn, supra,* 225 Cal.App.2d 122, 125.) By the same token, the People are not entitled to appeal from an order granting the motion. The People's remedy was by extraordinary writ, a remedy which they have invoked.

---

the municipal court's order that the publications not listed in the warrant be returned to defendant "was improper and must be vacated under the holding of *Aday* v. *Superior Court, supra,* page 800." From the brief comment concerning the municipal court's order for return of the unlisted books, we cannot determine whether the order was vacated because the magistrate had found the unlisted books obscene or whether it was contemplated that the magistrate should conduct further hearings to determine their contraband character. The Supreme Court denied a hearing in *Chapman,* Justices Peters and Tobriner voting for a hearing.

Insofar as it relates to the vacation of the municipal court's order to return the illegally seized items, we have difficulty reconciling *Chapman* with *Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229. The fact that in *Aday* the owners were denied the right to any pretrial adversary hearing on the issue of obscenity, while no such denial appears to have occurred in *Chapman,* may be a matter of some significance. In any event, *Chapman* does not alter the conclusion we have reached in the present case. In *Chapman* the criminal action was still pending whereas in the present case the trial, in which the only real issue was obscenity and in which films similar to those ordered returned were introduced into evidence, has been held and defendants acquitted.

The appeal did not operate as a stay and the court had jurisdiction to entertain the contempt proceedings.

## II

### WRIT OF REVIEW

■■■ The People seek annulment of the order adjudging the chief guilty of contempt on the ground the evidence failed to establish a willful violation of the order.[11]

The People argue that the chief's violation of the order was not willful because he relied on the advice of the district attorney that the appeal operated as a stay. The record reveals, however, that the trial judge rejected that argument noting that there was evidence the chief of police, when interviewed by the press, stated he would not comply with the order because in his opinion the seized material was "hard core pornography."

■■■ In reviewing a contempt order "the responsibility of the reviewing court is merely to ascertain whether there was sufficient evidence before the trial court to sustain the judgment and order. The power to weigh the evidence rests with the trial court." (*In re Ciraolo,* 70 Cal.2d 389, 394 [74 Cal.Rptr. 865, 450 P.2d 241].) ■■■ The record discloses that the trial judge disbelieved the chief's testimony that he acted in reliance upon the advice of the district attorney respecting the effect of the appeal. Credibility of a witness is, of course, a matter for the trier of fact. A review of the record in the instant case reveals sufficient evidence to support the order finding the chief in contempt.[12]

---

[11]Defendants suggest there was no judgment of contempt for review in that the judge directed counsel for defendants to prepare and submit a formal written order. While the reporter's transcript of the contempt proceeding reveals that at the conclusion of the hearing the court announced its decision and directed defense counsel to prepare an order, the minute order contains no such qualification. The minute order, together with the record (see *In re Morelli,* 11 Cal.App.3d 819, 850-851 [91 Cal.Rptr. 72]) contains the findings necessary for an adjudication of contempt.

[12]The People cite *City of Vernon* v. *Superior Court,* 39 Cal.2d 839 [250 P.2d 241]; *In re Donovan,* 94 Cal.App.2d 399 [210 P.2d 860]; and *Uhler* v. *Superior Court,* 117 Cal.App.2d 147 [255 P.2d 29, 256 P.2d 90], in support of their contention that the judgment of contempt should be reversed. While in *City of Vernon* v. *Superior Court, supra,* 39 Cal.2d 839, there were mitigating factors somewhat similar to those present here which the court held entitled the city contemners to a remission of previously imposed punishment, the underlying judgment of contempt was upheld earlier by the Supreme Court in *City of Vernon* v. *Superior Court,* 38 Cal.2d 509 [241 P.2d 243]. Language in *Donovan* indicating that a good faith but erroneous belief as to law would preclude a finding of contempt was impliedly disapproved by the first *Vernon* case wherein the court indicated that disobedience of a court order could not be excused by the fact that " 'it was in good faith and under mistake as to the law.' " (38 Cal.2d at p. 518.) Finally, *Uhler* is factually distinguishable in that the petitioner

■■■

## III

### MOTION TO DISMISS APPEAL

Inasmuch as the order to return was, for the reasons heretofore stated, nonappealable, defendant's motion to dismiss the People's appeal must be granted.

### DISPOSITION

The People's petition for writ of prohibition and writ of review is denied and the order to show cause heretofore issued is discharged. The stay order is dissolved provided, however, that the trial court is directed to defer imposition of sentence as to Chief Scott until 60 days after this opinion becomes final. In the event the chief purges himself of contempt by complying with the order to return within that period, no punishment shall be imposed. It is further ordered that the People's appeal in *People v. Frederick Arnold Loar and Kay Nancy Loar,* 4 Crim. 5616, be dismissed.

Kaufman, Acting P. J., and Gabbert, J., concurred.

A petition for a rehearing was denied November 27, 1972, and the opinion was modified to read as printed above. The People's petition for a hearing by the Supreme Court was denied January 3, 1973.

---

who was a county auditor was not afforded a reasonable time to review and process a warrant he was ordered to draw and upon institution of contempt proceedings complied with the court's order. Here, on the other hand, Chief Scott has yet to comply.

However, in view of the considerable lack of clarity in the law regarding the return of allegedly obscene materials, the chief's status as a public official and his refusal to return the seized materials as part of what he believed to be his public duty, the imposition of sentence should be deferred for 60 days from the date this opinion becomes final to afford the chief the opportunity to purge himself of contempt by complying with the superior court's order.