[Civ. No. 15840. Fourth Dist., Div. Two. July 29, 1976.]

SUKI, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

618

**COUNSEL**

Lappen, Abelson & Harris, Irmas, Simke & Hecht, Harland W. Braun, Jonathan Bailey Lappen, Elliot J. Abelson and Sidney M. Irmas for Petitioners.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, for Respondent and for Real Party in Interest.

## OPINION

TAMURA, Acting P. J.—This is an original proceeding in mandamus to compel the Superior Court of Orange County to vacate its order directing destruction of a quantity of magazines and related printing equipment and to require respondent court to order the materials returned to petitioners.

### BACKGROUND

The pertinent events leading to the institution of the instant proceeding were as follows:

On March 5, 1973, Judge McMillan of respondent court signed a search warrant authorizing a search of a building in the City of Los Alamitos, County of Orange, and the seizure therefrom of three copies each of magazines identified by 48 titles. Contemporaneously with the execution of the search warrant, Judge McMillan (on application of the District Attorney of Orange County) issued an order directed against Suki, Inc. and certain of its officers and directors to show cause why all magazines bearing the 48 titles and located at the premises described in the search warrant should not be declared obscene and be seized.

At the order to show cause hearing held on April 3, 1973, the People introduced into evidence copies of the magazines which had been previously seized pursuant to the search warrant.[1] Upon the court's inquiry whether either party desired to present any additional evidence, both parties responded in the negative and stated they would submit the matter. The judge thereupon stated, "I don't think there is any question that I shall find them to be obscene, each and everyone." In a formal order which he subsequently signed, the judge found the 48 titled magazines "obscene beyond any reasonable doubt" and further found that unless seized the magazines would be removed from the jurisdiction of the court. The order commanded that all copies of the magazines found at the premises described in the search warrant be seized and deposited in a warehouse to be approved by the court and be held "under the sole and exclusive dominion and control of this court pursuant to section 1536 of the Penal Code."[2]

---

[1]The order to show cause hearing was held in conjunction with a hearing on a motion to traverse the search warrant.

[2]The entire order was as follows:

"Pursuant to an affidavit duly subscribed and sworn before me, a search warrant for the warehouse located at 3841 North Catalina Avenue, Los Alamitos having been duly

On April 12, 1973, the Orange County Grand Jury returned an indictment against Suki, Inc. and certain named individuals charging a conspiracy to violate Penal Code sections 311.2 and 311.5 and 49 misdemeanor counts of violations of Penal Code section 311.2.[3] Several amended indictments were thereafter returned, the final one being returned on June 13, 1973.[4]

On July 24, 1973, the Los Angeles County Grand Jury returned an indictment against all of the defendants named in the Orange County indictment (except one) charging a conspiracy to violate Penal Code sections 311.2 and 311.5. Except as to a few titles, the Los Angeles County indictment was grounded on a conspiracy to sell and distribute

issued by this Court ordering the seizure of three copies each of items 1 through 48 as better described in said search warrant and affidavit which are incorporated by reference as though fully set forth herein, and the defendants by order of this Court having appeared in person and with counsel represented by counsel, to show cause why all copies of said items 1 through 48 presently remaining in the above named warehouse should not by this Court be declared obscene and ordered seized and a hearing at which both the People and the Defendants were given full opportunity to and did present evidence and argue the matter both as to the issue of obscenity and as to the validity of the search warrant; and the Court on the evidence presented at said hearing, having duly found that the above named items 1 through 48 as well as all copies contained in the 3841 North Catalina warehouse (A) where they are held for the purpose of sale and or distribution (B) are obscene beyond any reasonable doubt (C) are matter defined by *In re Gianini* and (D) that said material shall leave the jurisdiction of the Court unless seized; and, upon motion to traverse the above named and incorporated search warrant the Court having held that the search warrant to have been legally and validly issued and executed;

"You are therefore commanded between the hours of 7:00 a.m. and 10:00 p.m. to seize all copies of the above named items one through 48 presently located at 3841 North Catalina, Suite B, Los Alamitos and to deposit the same with this Court by placing the materials into an appropriate warehouse approved by this court and under the sole and exclusive dominion and control of this court pursuant to Section 1536 of the Penal Code.

"It is so ordered.

"Given under my hand this 3rd day of April, 1973.

"[s] BYRON K. MC MILLAN
　　　 BYRON K. MC MILLAN
　　　 Judge of the Superior Court"

[3]Penal Code section 311.2 provides in pertinent part: "(a) Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others, or who offers to distribute, distributes, or exhibits to others, any obscene matter is guilty of a misdemeanor."

Penal Code section 311.5 provides: "Every person who writes, creates, or solicits the publication or distribution of advertising or other promotional material, or who in any manner promotes, the sale, distribution, or exhibition of matter represented or held out by him to be obscene, is guilty of a misdemeanor."

[4]The final amended Orange County indictment named several individual defendants in addition to those charged in the original indictment.

the same titled magazines which were the subject of the Orange County indictment. Partly because defendants' operations were conducted principally in Los Angeles County, trial on the Los Angeles County indictment was held first. In that trial, after the People rested, defendants introduced testimony of two expert witnesses on the issue of obscenity and moved for acquittal pursuant to Penal Code section 1118. The court granted the motion on the ground that the magazines were as a matter of law not obscene.

Following acquittal in Los Angeles, defendants entered pleas of "once in jeopardy" in the pending Orange County Superior Court action and moved to dismiss the case on that ground. After an evidentiary hearing on the motion, the court ruled that jeopardy had attached as to the felony count but not as to the misdemeanor counts. Accordingly, the court dismissed the felony count and, on application of the defendants, ordered the case transferred to the municipal court for trial on the misdemeanor charges. The People appealed from the order of dismissal and this court affirmed the order in an unpublished opinion. (4 Crim. 6433, Nov. 19, 1974.) We noted that the evidence adduced at the motion to dismiss showed that defendants' business operations were conducted primarily from Los Angeles County; defendants' business office and storage facilities were maintained in that county; only one storage facility referred to as an "excess storage warehouse" was located in Los Alamitos in Orange County; and the conspiracies charged in both the Los Angeles and the Orange County indictments covered the same activities and period of time. We concluded that the conspiracies charged in the two indictments were identical.

Following affirmance of the order dismissing the felony count of the Orange County indictment, the case was transferred to an Orange County Municipal Court. Petitioners thereupon moved to dismiss the misdemeanor counts on the ground of collateral estoppel. Judge Beacom held that the doctrine of collateral estoppel precluded the People from relitigating the issue of obscenity and granted the motion to dismiss. The People appealed to the Appellate Department of the Superior Court of Orange County and that court affirmed the judgment of dismissal "on the ground of collateral estoppel only." No further appellate review was sought by the People.

On remand to the municipal court, petitioners made a motion for the return of all property seized and held by the Orange County authorities. Judge Beacom granted the motion and issued an order directing the

Clerks of the Superior and Municipal Courts of Orange County, the District Attorney of Orange County, and the Los Alamitos Police Department to return to Suki, Inc. all items seized and held by them with or without a search warrant.

On the following day (Jan. 20, 1976) Judge Beacom's order was brought to the attention of Judge McMillan of respondent court. He thereupon issued ex parte a minute order stating that unless a higher court directs him to do otherwise, the seized materials will remain in the custody of respondent court and will be destroyed after a reasonable time for appellate review of the order.[5] Petitioners made a motion before Judge McMillan to vacate his minute order. On February 24, 1976, Judge McMillan denied the motion to vacate and ordered the materials to be destroyed on April 24, 1976. Petitioners thereupon filed the instant petition for writ of mandate to compel respondent court to vacate its orders and to return the seized materials to petitioners. We issued an alternative writ, order to show cause, and a stay order.

■ Mandamus is an appropriate remedy for a defendant in an obscenity prosecution to compel return of presumptively protected

---

[5]The text of the minute order is as follows:

"I have on this day been given an order issued by the Municipal Court of the West Orange County Judicial District dated January 9, 1975 and signed by the Honorable Richard J. Beacom, which orders the return to SUKI, INC., all the material seized under a search warrant issued by this court on March 5, 1973.

"I was the judge signing said search warrant, and the search warrant contained therein an order to return and deposit all items seized to me. The items seized were deposited with the Superior Court and have since remained solely in my custody and under my direct supervision.

"On April 3, 1975 a lengthy adversary hearing was duly held on the issue of obscenity. All parties were present and represented by counsel. The burden of proof was held by this court to be on the People and to be beyond a reasonable doubt. The court at that hearing reviewed the material seized, received evidence, considered the arguments of counsel, and found that all the material was obscene beyond any reasonable doubt. I then ordered the material seized to be retained and a seizure of all remaining material identical in content, to be held until further order of this court. I have on this date reviewed the material, reconsidered the evidence and argument, and I reaffirm the original finding of obscenity. Should I with the one hand release the material held in the custody of this court pursuant to my original order in the matter, I would with the other hand feel compelled to issue another seizure order for the same material which this court finds to be obscene beyond a reasonable doubt.

"I find *no* ruling that compels this court to release from its custody the material found to be obscene, nor any ruling which binds this court to a finding that the material is not obscene. Until an order is issued by a higher court directing this court to return the material, I will continue to retain the material within this court's custody as obscene matter and contraband, and I will further order the material to be destroyed after a reasonable time has run for appellate review."

material wrongfully sequestered and withheld by custodial officers. (*Flack* v. *Municipal Court,* 66 Cal.2d 981, 984-985 [59 Cal.Rptr. 872, 429 P.2d 192]; *Franklin* v. *Municipal Court,* 26 Cal.App.3d 884, 897 [103 Cal.Rptr. 354]; *Aday* v. *Municipal Court,* 210 Cal.App.2d 229, 249 [26 Cal.Rptr. 576]. See *Minsky* v. *City of Los Angeles,* 11 Cal.3d 113, 123 [113 Cal.Rptr. 102, 520 P.2d 726]; *People* v. *Superior Court (Loar),* 28 Cal.App.3d 600, 607, 610, 617 [104 Cal.Rptr. 876].) Although the parties debate a number of issues concerning the jurisdiction of respondent court to issue its January 20 minute order declaring its intention to retain the seized materials and order their destruction, the ultimate question we must decide is whether petitioners are entitled to have the materials returned to them.

The People urge that Judge McMillan's determination at the order to show cause hearing constituted a final judicial determination on the issue of obscenity and that the magazines are therefore contraband subject to destruction on order of respondent court.[6] Petitioners, on the other hand, contend that they are entitled to an order commanding restitution of the seized materials because: (1) Judge McMillan's determination was not a final judicial determination that the magazines were obscene and (2) under the doctrine of collateral estoppel, the People are bound by the determination of the Los Angeles County Superior Court that the magazines are not obscene. For the reasons to be stated, we have concluded that petitioners' contention must be upheld.

I

Preliminarily we review the constitutional principles applicable to the resolution of this appeal.

A prior restraint of presumptively protected materials is invalid unless adequate procedural safeguards are provided to obviate the danger of suppressing constitutionally protected speech. (*Southeastern Promotions, Ltd.* v. *Conrad,* 420 U.S. 546, 559-560 [43 L.Ed.2d 448, 459-460, 95 S.Ct. 1239].) "*First,* the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second,* any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. *Third,* a prompt final judicial determination must be assured." (*Southeastern Promotions, Ltd.* v. *Conrad, supra,* at p. 560 [43 L.Ed.2d at p. 460]; original italics.)

---

[6]See Penal Code sections 1418.5 and 1419 on destruction of exhibits.

■ Insofar as they are pertinent to the case at bench, the specific safeguards which must accompany seizure of presumptively protected materials are as follows: (1) Except in cases of legitimate emergencies, a search warrant must be issued prior to seizure. (*Roaden* v. *Kentucky,* 413 U.S. 496, 502 [37 L.Ed.2d 757, 763-764, 93 S.Ct. 2796]; *People* v. *Superior Court (Freeman),* 14 Cal.3d 82, 85, 88-89 [120 Cal.Rptr. 697, 534 P.2d 393]; *Flack* v. *Municipal Court, supra,* 66 Cal.2d 981, 991-992.) (2) Following seizure, the owner of the materials must be accorded the opportunity to secure a prompt pretrial adversary hearing on the issue of obscenity. (*Marcus* v. *Search Warrant,* 367 U.S. 717, 737-738 [6 L.Ed.2d 1127, 1139-1140, 81 S.Ct. 1708]; *Aday* v. *Superior Court,* 55 Cal.2d 789, 799-800 [13 Cal.Rptr. 415, 362 P.2d 47]; *People* v. *Superior Court (Loar), supra,* 28 Cal.App.3d 600, 616; *Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229. See *People* v. *Aday,* 226 Cal.App.2d 520, 529-530 [38 Cal.Rptr. 199].) (3) A prompt final and full adversary trial on the issue of obscenity must be assured. (*Southeastern Promotions, Ltd.* v. *Conrad, supra,* 420 U.S. 546, 560 [43 L.Ed.2d 448, 460]; *Freedman* v. *Maryland,* 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734]; *People* ex rel. *Busch* v. *Projection Room Theater,* 17 Cal.3d 42, 57 [130 Cal.Rptr. 328, 550 P.2d 600]; *People* v. *Superior Court (Loar), supra,* 28 Cal.App.3d 600, 617-618.)

Turning to the case at bench, aside from certain procedural defenses, the thrust of the People's response to the alternative writ is that despite the dismissal of all criminal charges against petitioners, Judge McMillan's determination at the order to show cause hearing constituted a final judicial determination that the magazines are obscene and that they are, therefore, nonreturnable contraband. We cannot uphold the People's position.

(a)  ■  *The determination at the order to show cause hearing was not a final judicial determination of obscenity.*

The order to show cause proceeding was neither designed for nor intended to be a full final adversary trial on the issue of obscenity.

As has been noted, the order to show cause proceeding was initiated by the People in order to obtain judicial authorization for the seizure of all of the 48 titled magazines at the described premises. The procedure was manifestly conceived by the People in an attempt to avoid a constitutional attack on mass seizure of presumptively protected mate-

rial.[7] Since the order to show cause proceeding was not ancillary to a civil action, it was obviously devised as a prosecutorial tool to gather and preserve evidence for the institution and prosecution of a criminal charge against petitioners for violation of the obscenity laws. That this was the purpose of the proceedings is borne out by the following facts. The deputy district attorney represented to the court below at the order to show cause hearing that "this is a criminal proceeding." The judge also agreed that it was a "criminal matter." Some of the materials seized pursuant to the order were used as evidence before the grand jury which returned the indictments against petitioners. Finally, Judge McMillan's order expressly provided that the seized materials were to be held "pursuant to section 1536 of the Penal Code." Penal Code section 1536 pertains to custody of property seized under a search warrant for use in a criminal prosecution.

Thus, the order to show cause proceeding was merely a *pretrial adversary hearing* to determine whether mass seizure of the magazines should be authorized for use in connection with a criminal prosecution. As such, Judge McMillan's determination could have only established probable cause for the seizure.

"A pretrial adversary hearing on obscenity . . . determines no more than probable cause, not obscenity in fact. (*People* v. *Sarnblad,* 26 Cal.App.3d 801, 807 [103 Cal.Rptr. 211]; *People* v. *Golden,* 20 Cal.App.3d 211, 215 [97 Cal.Rptr. 476].) 'Even a prior adversary hearing before the issuing magistrate does no more than establish the factor of probable cause for the warrant. It does not establish the *fact* of obscenity itself, or

---

[7]In *People* v. *Superior Court (Loar), supra,* 28 Cal.App.3d 600, 618, fn. 9, we noted that mass seizures of presumptively protected materials have been viewed critically by the United States Supreme Court and that in *Cinema Classics, Ltd.* v. *Busch,* 339 F.Supp. 43 (affd. *sub nom. Busch* v. *Cinema Classics, Ltd.* and *Davis* v. *Cinema Classics, Ltd.,* 409 U.S. 807 [34 L.Ed.2d 66, 93 S.Ct. 105]) such seizures were held to be invalid absent a prior adversary hearing and a determination that the materials are obscene.

There is no statutory authority for the order to show cause procedure devised by the People in the instant case. However, inasmuch as petitioners have not challenged the validity of the procedure and since disposition of the matter before us does not require a ruling on the question, we express no opinion concerning the validity of the procedure. We simply note that we are not persuaded by the People's contention that the validity of the nonstatutory procedure devised by them is supported by the recent decision of our high court in *People* ex rel. *Busch* v. *Projection Room Theater, supra,* 17 Cal.3d 42. *Busch* merely holds that in an action under the public nuisance statutes to abate as a public nuisance the display of obscene books and films, it is proper to require a prior adversary hearing despite the absence of a provision therefor in the statute. The instant order to show cause proceeding was not ancillary to a civil action under the public nuisance statutes or any other statute.

there would be no need for the trial.' (*People* v. *Golden, supra.*) In *People* v. *Luros, supra,* 4 Cal.3d 84, the court held that evidence of contemporary community standards is not required to establish probable cause and in reaching that conclusion, reaffirmed (at p. 88) the following statements from *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, at page 799: 'Where, as here, the seizure occurs under a warrant, an ex parte determination of the issue of obscenity, so far as *probable cause* is concerned, has taken place before issuance of the warrant, and immediately after the seizure a determination of the issue *to that extent* can be obtained in adversary proceedings by controverting the warrant under sections 1539 and 1540 of the Penal Code.' (Italics supplied.) The clear import of the foregoing cases is that where allegedly obscene materials are seized for use as evidence in a criminal prosecution for violation of obscenity laws, a pretrial adversary hearing on obscenity extends only to the establishment of probable cause." (*People* v. *Superior Court (Loar), supra,* 28 Cal.App.3d 600, 616-617; original italics.)

The conclusion is inescapable that Judge McMillan's determination at the order to show cause hearing, though expressed as a finding "beyond a reasonable doubt," constituted no more than the establishment of probable cause.

(b) ▆▆ *The probable cause determination does not justify indefinite official retention of seized materials.*

A probable cause determination in a pretrial adversary hearing in an obscenity prosecution can neither be equated with a final judicial determination of obscenity nor can it justify indefinite official retention of the seized materials.

One of the most important safeguards against the unlawful suppression of constitutionally protected speech is the assurance of a prompt final judicial determination on the issue of obscenity. (*Southeastern Promotions, Ltd.* v. *Conrad, supra,* 420 U.S. 546, 559-560 [43 L.Ed.2d 448, 459-460]; *People* ex rel. *Busch* v. *Projection Room Theater, supra,* 17 Cal.3d 42, 57.) ▆▆ Establishment of probable cause that presumptively protected materials offend a criminal statute justifies their official sequestration pending final judicial determination of obscenity in fact in the criminal action, but final determination on the merits may not be deferred for an unreasonable or indefinite period. "Prompt trial on the merits is particularly urgent where . . . there has been a *mass seizure* of presumptively protected material. Seizure and retention by the state in

such cases clearly constitute prior restraint on the exercise of free speech (*Marcus* v. *Search Warrant, supra,* 367 U.S. 717; *A Quantity of Books* v. *Kansas, supra,* 378 U.S. 205) and official sequestration without prompt institution of proceedings leading to a final judicial determination on the merits within a reasonable time transgresses First Amendment rights." (*People* v. *Superior Court (Loar), supra,* 28 Cal.App.3d 600, 618, fn. om.)

In *People* v. *Superior Court (Loar), supra,* defendants were acquitted of a charge of conspiracy to distribute obscene films. There had been a mass seizure of a vast quantity of films but only a few of them were introduced into evidence. Following the acquittal, the judge of the superior court who tried the case granted a motion for the return of all films seized. The People sought a writ of prohibition from this court challenging the validity of the order to return. One of the People's contentions in that case was that the verdicts of acquittal did not determine that the mass of films not introduced into evidence were not obscene and that therefore the court lacked power to order their restitution to the owners. Our response to that contention was: "In the present case almost a year elapsed between seizure and the order to return. Consequently, even if it be assumed, as proposed by the People, that the jury verdicts of acquittal in the criminal action were not a final judicial determination on obscenity with respect to the films not introduced into evidence, continued official retention with no further criminal action pending or contemplated would be violative of the owners' First Amendment and due process rights and would require restoration of the seized items. (See *Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229, 249; *Cinema Classics, Ltd.* v. *Busch, supra,* 339 F.Supp. 43, affd. *sub nom. Busch* v. *Cinema Classics, Ltd.* and *Davis* v. *Cinema Classics, Ltd.* (Oct. 10, 1972) *supra,* 409 U.S. 807.)" (*People* v. *Superior Court (Loar), supra,* 28 Cal.App.3d 600, 618-619.)

In the case at bench more than three years have elapsed since the mass seizure of the magazines. All criminal prosecutions in Orange County against petitioners have been dismissed. Consequently, wholly apart from the question whether the People are precluded by the doctrine of collateral estoppel from relitigating the issue of obscenity, petitioners are entitled to have the seized materials restored to them.[8] A

---

[8]The People cite *People* v. *Chapman,* 17 Cal.App.3d 865, 871 [95 Cal.Rptr. 242], and *People* v. *Burnstad,* 32 Cal.App.3d 560, 565 [108 Cal.Rptr. 247] [disapproved on another point in *People* v. *Superior Court (Freeman), supra,* 14 Cal.3d 82, 87], for the proposition that, even if illegally seized, property which may be obscene can be retained by a court pending a determination whether it is contraband. As we noted in *People* v. *Superior*

contrary holding would, in the words of the United States Supreme Court, allow temporary restraint in itself to "become a form of censorship." (Cf. *Heller* v. *New York, supra,* 413 U.S. 483, 490 [37 L.Ed.2d 745, 753, 93 S.Ct. 2789]; *United States* v. *Thirty-Seven Photographs, supra,* 402 U.S. 363, 367 [28 L.Ed.2d 822, 828-829, 91 S.Ct. 1400].)

(c) ■ *The People are also barred by the doctrine of collateral estoppel from relitigating the issue of obscenity.*

In California, the doctrine of collateral estoppel applies in a criminal case when the following elements are present: (1) The issue necessarily litigated in the previous trial is identical to the one sought to be relitigated; (2) the previous trial resulted in a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party (or in privity with a party) in the previous trial. (*People* v. *Taylor,* 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622]; *People* v. *Superior Court (Jackson),* 44 Cal.App.3d 494, 501 [118 Cal.Rptr. 702].) The bar of collateral estoppel is constitutionally compelled in criminal cases when the same defendant is involved in both trials. (*People* v. *Taylor, supra,* at p. 692; *Ashe* v. *Swenson,* 397 U.S. 436, 443-447 [25 L.Ed.2d 469, 475-478, 90 S.Ct. 1189].)

In the case at bench, following a trial on the merits, the Los Angeles Superior Court determined that the materials in question were as a

---

*Court (Loar), supra,* 28 Cal.App.3d 600, 621-622, fn. 10, it is difficult to reconcile *Chapman* with our conclusion herein. However, both *Chapman* and *Burnstad,* unlike the instant case, involved situations where only a matter of several months, not years, had elapsed from the date of the seizure to the making of the order under review. In those circumstances, it is perhaps arguable that the retention of the materials is not so clearly offensive to the requirement of a final judicial determination within "the shortest period 'compatible with sound judicial resolution.' " (See *Heller* v. *New York,* 413 U.S. 483, 492, fn. 9 [37 L.Ed.2d 745, 754, 93 S.Ct. 2789].) In the case at bench, almost three years elapsed from the date of the seizure of the materials in question to the making of the order (refusing to return the materials) which petitioners have attacked.

In any event, it is noteworthy that *Chapman* relied exclusively upon a portion of *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, 800, which has been undermined by *Marcus* v. *Search Warrant, supra,* 367 U.S. 717. (*Aday* v. *Municipal Court, supra,* 210 Cal.App.2d 229, 240-248; *People* v. *Superior Court (Loar), supra,* 28 Cal.App.3d 600, 616; *Hicks* v. *Miranda,* 422 U.S. 332 [45 L.Ed.2d 223, 95 S.Ct. 2281, 2290, fn. 15].) Similarly, *Burnstad* relied upon *Chapman.* Insofar as *Chapman* and *Burnstad* approve of prolonged retention of possibly obscene materials pending a court's final determination whether such materials are obscene, those cases are irreconcilable with the principle that "any restraint imposed in advance of a final judicial determination on the merits must . . . be limited to preservation of the status quo for the *shortest fixed period compatible with sound judicial resolution.*" (*Freedman* v. *Maryland, supra,* 380 U.S. 51, 59 [13 L.Ed.2d 649, 655]; *United States* v. *Thirty-Seven Photographs,* 402 U.S. 363, 367 [28 L.Ed.2d 822, 828-829, 91 S.Ct. 1400]. See *Heller* v. *New York, supra,* 413 U.S. 483, 489, fn. 5 [37 L.Ed.2d 745, 752].)

matter of law not obscene. The question whether the People were barred by the doctrine of collateral estoppel from relitigating the issue of obscenity was litigated before the Orange County Municipal Court. A judge of that court held that the doctrine applied and ordered the misdemeanor charges dismissed. On appeal to the Appellate Department of the Orange County Superior Court, the order of dismissal was affirmed "on the ground of collateral estoppel only." The People did not seek further appellate review and the municipal court order has long since become final.

The People nevertheless still contend in these proceedings that the municipal court judge erred in applying the collateral estoppel doctrine. It is urged that the decision of the Los Angeles Superior Court judge was not a final judicial determination of obscenity because the People were precluded from seeking appellate review of that decision. Citing *Jacobellis* v. *Ohio*, 378 U.S. 184 [12 L.Ed.2d 793, 84 S.Ct. 1676], and *Zeitlin* v. *Arnebergh*, 59 Cal.2d 901 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707], the People argue that only a reviewing court may render a final judicial determination on the question of obscenity. The contention is meritless. The cited cases simply stand for the proposition where a trier of fact (judge or jury) determines that presumptively protected material is obscene, the owner is entitled to independent appellate review of the entire record. The independent review requirement is simply an additional safeguard against suppression of protected speech; it is not a principle designed to permit suppression of materials determined to be not obscene by a trier of fact in a criminal proceeding. Indeed, the *Zeitlin* court itself cautioned that its holding is not to be interpreted as sanctioning the impairment of a criminal defendant's right "to have the jury determine all relevant issues bearing upon guilt, including the question of whether the material is obscene." (59 Cal.2d at p. 908, fn. 11.) If the People's position were to be upheld, there could never be a final judicial determination on the issue of obscenity in an obscenity prosecution unless the materials were found to be obscene at trial.

■ In any event, the parties to these proceedings having previously litigated the applicability of collateral estoppel before the municipal court and the appellate department of the superior court, that issue is res judicata.[9]

---

[9]The People argue that the superior court's refusal (in conjunction with its order dismissing the Orange County felony prosecutions) to dismiss the misdemeanor prosecutions was res judicata that the doctrine of collateral estoppel does not apply. However, the superior court's ruling denying petitioners' motion to dismiss the

## II

The People also raise certain procedural issues in response to these proceedings. It is urged that the municipal court had no jurisdiction to order return of the materials because they were seized and held pursuant to the search warrant and order issued by the superior court and are in its custody and control. They contend that the motion for return of the seized materials should have been addressed to respondent superior court and not to the municipal court. The contention is without merit.

Judge McMillan ordered the seized materials to be held under the "sole and exclusive dominion and control of this court *pursuant to Section 1536 of the Penal Code.*" (Italics supplied.) Penal Code section 1536 provides: "All property or things taken on a warrant must be retained by the officer in his custody, subject to the order of the court to which he is required to return the proceedings before him, *or of any other court in which the offense in respect to which the property or things taken is triable.*" (Italics supplied.)

■ When the felony count of the indictment was dismissed leaving only misdemeanor counts, the superior court was empowered to divest itself of jurisdiction by transferring the case to the municipal court. (See Pen. Code, § 1462.2; *People* v. *Clark,* 17 Cal.App.3d 890, 897-898 [95 Cal.Rptr. 411]; Witkin, Cal. Criminal Procedure (1975 Supp.) § 31, pp. 45-46.) Respondent court having done so, the municipal court was the court "in which the offense in respect to which the property or things taken is triable" within the meaning of Penal Code section 1536. The motion for return was properly made in the municipal court.[10] (See *People* v. *Superior Court (Loar), supra,* 28 Cal.App.3d 600, 608.)

Even assuming for the sake of argument that the motion should have been made in respondent court, petitioners' motion in respondent court to vacate its ex parte order announcing its intention to retain custody of

---

misdemeanors was not a final judgment and did not operate as res judicata to bar the municipal court's subsequent favorable consideration of the motion. (4 Witkin, Cal. Procedure, Judgment, § 162, and cases cited therein.)

[10]Penal Code section 1417 provides: "All exhibits which have been introduced or filed in any criminal action or proceeding may be disposed of as provided in this chapter."

Penal Code section 1418 provides in relevant part: "The court may, on application of the party entitled thereto, or an agent designated in writing by the owner, order all such exhibits, other than documentary exhibits, as may be released from the custody of the court without prejudice to the state, delivered to such party at any time after the final determination of the action or proceedings; . . ."

the seized materials and to order their destruction was tantamount to a motion for return. Upon denial of the motion, petitioners were entitled to seek a writ of mandate from this court to compel respondent court to vacate its order and to order the return of the seized materials.

## CONCLUSION AND DISPOSITION

This case dramatically points up the inherent difficulty of applying the existing standard for determining what is obscene. A superior court judge of one county decided that the materials in question are as a matter of law not obscene; a judge of the respondent court is of the view that the materials are obscene "beyond any reasonable doubt." The question before us, however, is not which judge is "right." The issue is more fundamental. It is whether the Constitution permits prolonged governmental censorship of literary and pictorial expressions without a prior full adversary trial in which it has been determined that the materials are obscene. We hold that it does not. If this allows some unprotected speech to go unsuppressed, it is a small price to pay for the preservation of rights so essential to a free society.

Let a peremptory writ of mandate issue as prayed for by petitioners.

Kaufman, J., and Fogg, J.,* concurred.

A petition for a rehearing was denied August 16, 1976, and the petition of the respondent and the real party in interest for a hearing by the Supreme Court was denied October 6, 1973.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.